**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
                                        :
MARYANN BUCKLEY,                        :
                                        :
                    Plaintiff,          :        Civil Action No. 09-5058 (JAP)
          v.                            :
                                        :        **OPINION**
MICHAEL J. ASTRUE,                      :
COMMISSIONER OF SOCIAL                  :
SECURITY,                               :
                                        :
                    Defendants.         :
_____ :

PISANO, District Judge:

Before the Court is Maryann Buckley's ("Plaintiff") appeal of the final decision of the

Social Security Administration ("Commissioner") denying Plaintiff's request for disability

insurance benefits ("DIB") from her amended alleged onset date of September 1, 1998 through

her date last insured, December 31, 2002.  The Court has jurisdiction to review this matter under

42 U.S.C. § 405(g) and § 1383(c)(3).  This matter was adjudicated without oral argument

pursuant to Fed. R. Civ. P. 78(b).  As the Administrative Record provides substantial evidence in

support of the Commissioner's decision that Plaintiff was not disabled, the Court affirms.

**I. BACKGROUND**

      A.  **Procedural History**

Plaintiff first filed for DIB on March 24, 1999, alleging that she became disabled on

February 3, 1997.[1]  (Administrative Record ("R.") at 434.) The New Jersey Department of Labor

Division of Disability Services ("state agency") denied Plaintiff's claim on July 1, 1999.

Plaintiff sought reconsideration of the agency decision and was again denied DIB on October 12,

_____

[1] The alleged onset date was modified to September 1, 1998 via an amendment at the plaintiff's 2007 supplemental
hearing.

1999. (*Id.*)  Plaintiff filed a timely appeal, and was granted a hearing before an Administrative

Law Judge ("ALJ") pursuant to 20 C.F.R. § 404.929 (2010).  (R. at 434.)  A hearing on

Plaintiff's claim was held before the Honorable Richard L. DeSteno, A.L.J., in Newark, New

Jersey, on February 8, 2000. (*Id.*) Judge DeSteno denied Plaintiff's DIB claim on May 15, 2000.

Plaintiff requested a review of the decision by the Appeals Council on July 18, 2000. (*Id.*)

In the interim, before requesting an appeal of Judge DeSteno's decision, Plaintiff filed a

new claim for DIB on June 5, 2000. (*Id.*)  This new claim was granted by the state agency on

December 22, 2000 finding that Plaintiff was "disabled," and entitled to DIB, as of May 17,

2000. (*Id.*)

Despite being awarded DIB on her second claim, Plaintiff's appeal of Judge DeSteno's

decision denying her original DIB claim remained pending before the Appeals Council.  On

September 6, 2001, the Appeals Council denied Plaintiff's request for a review of her original

disability claim. (*Id.*)   Plaintiff appealed this decision to the United State District Court for the

District of New Jersey on November 8, 2001. (*Id.*)  Upon stipulation of the parties, the

Honorable William H. Walls, U.S.D.J., issued a consent order remanding the case to the

Commissioner for further proceedings.  (R. at 378-82.)  The Commissioner consolidated

Plaintiff's two claims and remanded the matter to Judge DeSteno under 20 C.F.R. § 404.977

(2010). (R. at 383.)[2]

Judge DeSteno held a second hearing on the consolidated claims and, on April 16, 2004,

denied Plaintiff DIB.  He found that Plaintiff was not disabled at any point during the relevant

period and effectively overturned the state agency's determination on the second claim. (R. at

325.)  Plaintiff again sought review of Judge DeSteno's decision before the Appeals Council.

---

[2] The December 2000 "disabled" finding was reopened within the permissible four-year period because of clear "error on the face," 20 § C.F.R. § 404.989 (2010).

The Appeals Council denied that request for review on July 28, 2005. (R. at 291.)  Plaintiff filed

a timely appeal in the District of New Jersey, and on September 6, 2006, the Honorable Anne E.

Thompson, U.S.D.J., issued an opinion remanding the case back to the Commissioner for further

proceedings.  Judge Thompson found that Plaintiff was entitled to a full and fair hearing before a

different ALJ.  (R. at 445-53.)

A supplemental hearing was held before the Honorable Dennis O'Leary, A.L.J., on April

24, 2007.  Judge O'Leary issued an opinion denying Plaintiff's claims for DIB on June 5, 2007.

Judge O'Leary found that Plaintiff was "not disabled" under the Social Security Act at any time

between September 1, 1998 and December 31, 2002.  (R. at 434-43)  Plaintiff filed a request for

review with the Appeals Council on July 5, 2007.  The Appeals Council declined to assume

jurisdiction, rendering Judge O'Leary's denial the final decision of the Commissioner. (R. at

424-26.)

Plaintiff subsequently filed this action challenging the Commissioner's decision, thus

bringing the matter of her DIB before this Court for the third time since 2001.

### B.  <u>Factual History</u>

Maryann Buckley was employed as a full-time import manager from December 1975 to

February 1997. (R. at 56.) She has a high school education and has not completed any special job

training or vocational school. (*Id.* at 61.)

As a full-time import manager, Plaintiff was responsible for purchasing imported

products, as well as expediting, buying, and negotiating the price for new products. (*Id.*)  She

was responsible for overseeing many elements of the importing process and reported directly to

the president of her company. (R. at 492.)  Plaintiff described her position as an "office job"

though she went into the warehouse on a daily basis.  (*Id.* at 493.)  Plaintiff's work activities

included working on the computer, writing reports, communicating with vendors, and visiting the warehouse. (*Id.*)  In her initial filing with the Commissioner, Plaintiff claimed that during her average work day she walked for one hour, stood for one hour, stooped for 30 minutes, wrote/typed/handled small objects for an hour and a half, and sat for four hours. (R. at 56.)  No significant lifting or carrying was required. (*Id.*)

Plaintiff wrote in her initial filing for DIB that she stopped working because of her illness, (R. at 55), yet in her 2007 supplemental hearing before Judge O'Leary she stated that she stopped working because she was "downsized." (R. at 493).  Plaintiff held her position as a full-time import manager for 21 years, (*id*), and is now collecting retirement benefits, (*id.* at 488).

In Plaintiff's original filing for DIB she described continuous aching, stabbing, and throbbing pain in her knees and spine. (R. at 49.)  According to Plaintiff's pain report, she felt pain when walking, sitting "in a downward position," doing household chores, and when moving her foot from the gas pedal to the brake. (*Id.*)  Plaintiff stated that sometimes elevating her legs would mitigate the severity of the pain, "but pain is always there." (*Id.*)  Plaintiff could not take many pain control medications because she was on Coumadin, a blood thinner, for her atrial fibrillation. (R. at 266.)

Additionally, Plaintiff described intermittent chest pain that occurred on a monthly basis and lasted for 30 minutes per occurrence. (R. at 51.)  Plaintiff claimed that her chest pain caused shortness of breath and she would lie down to minimize it. (*Id.*)  Plaintiff indicated that her chest pain was caused by climbing stairs, medications, stress, lack of sleep, and other "unknown reasons." (*Id.*)

Plaintiff was first bothered by her conditions in February 1993, but she continued to work for the next four years, until February 1997, when she was downsized. (*Id.* at 55.)  Dr. Richard

Lesko, an internist, began seeing and treating Plaintiff for her leg pain in 1995; Dr. Andrew

Beamer, a cardiologist, began treating Plaintiff's heart condition in 1994. (*Id*. at 57.)

Plaintiff lived with her daughter during the time of her alleged disability. (R. at 71.)

Plaintiff prepared her own breakfast, stood for twenty minutes to begin dinner preparations, paid

the bills, and showered without assistance, though her daughter listened to ensure she did not

fall. (*Id.* at 71-76, 275)  Plaintiff's daughter took care of household maintenance, shopping, and

cooking main meals; another daughter drove Plaintiff to doctors' appointments. (*Id.* at 74-75.)

Plaintiff was able to talk on the phone, read, and watch TV. (*Id.*)


## II. DISCUSSION

### A.  <u>Standard of Review</u>

Under 42 U.S.C. § 405(g), a District Court reviews an ALJ's decision to determine

whether there is substantial evidence in the record to support the challenged decision.  *Plummer*

*v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  An ALJ's findings of fact are binding upon the Court

so long as they are supported by substantial evidence in the record. *Doak v. Heckler*, 790 F.2d

26, 28 (3d Cir. 1986).  The Supreme Court has defined substantial evidence as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co*. v. *NLRB*, 305 U.S. 197,

229 (1938)).   The Third Circuit has further explained that substantial evidence is more than a

mere scintilla of evidence but may be less than a preponderance of the evidence. *Stunkard v.*

*Sec'y of Health & Human Serv.*, 841 F.2d 57, 59 (3d Cir. 1988) (applying the substantial

evidence definition to a Social Security appeal). The Court must determine whether the

Commissioner reached a reasonable decision, but it is not tasked with undertaking a *de novo*

review of the Commissioner's decision.  *Mirabile v. Comm'r of Social Sec.*, No. CIV.A. 07-
3102, 2008 U.S. Dist. LEXIS 101942, at *8 (D.N.J. 2008); *see also Williams v. Sullivan*, 970
F.2d 1178, 1182 (3d Cir. 1992).

 The Court has an obligation to review both the medical and vocational evidence in its
totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). As part of its review, the Court must
take into account any information in the record that fairly detracts from the evidence relied upon
by the ALJ.  *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997).  "The Commissioner
has a corresponding duty to facilitate the court's review," and when faced with conflicting
evidence, there must be an adequate explanation in the record articulating the Commissioner's
reasons for rejecting or discrediting competent evidence.  *Mirabilie*, 2008 U.S. Dist. LEXIS
101942, at *8.  The Third Circuit has stressed that a meaningful court review requires a full
explanation of the Commissioner's decision-making:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently
> explained the weight he has given to obviously probative exhibits, to say that his
> decision is supported by substantial evidence approaches an abdication of the
> court's duty to scrutinize the record as a whole to determine whether the
> conclusions reached are rational.

*Gober v. Matthews,* 574 F.2d 772, 776 (3d Cir. 1978).  Nonetheless, the district court cannot
"weigh the evidence or substitute its conclusions for those of the fact-finder," and its task is to
determine whether or not there was substantial evidence to justify to the Commissioner's finding.
*Williams*, 970 F.2d at 1182.


 **B.  Establishing a Disability Under the Act**

 Plaintiff is seeking DIB under Title II of the Social Security Act.  The disability
determination is governed by 42 U.S.C. § 423.  Plaintiff is eligible for DIB if she meets the

disability period requirements of 42 U.S.C. § 416(i)(2), and can demonstratethat she is disabled

based on an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423(d)(1)(A).  A person will be designated "disabled" if her physical or mental

impairments are "of such severity that [s]he is not only unable to do h[er] previous work, but

cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial work which exists in the national economy…" 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential process for determining whether

an individual is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a).  The steps are

analyzed in a sequential order, and if at any step Plaintiff is determined "disabled" or "not

disabled" the evaluation will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).  In step

one, a claimant must establish that she has not engaged in "substantial gainful activity"[3] since the

onset of her alleged disability.  In step two, the claimant must prove that she suffers from a

"severe impairment" or "combination of impairments" that significantly restricts her ability to

perform basic work activities. 20 C.F.R. § 404.1520(c).  The claimant bears the burden of

establishing that she has met the requirements of both steps one and two, if she fails to meet her

burden, DIB will be denied automatically.  *See Bowen v. Yuckert,* 482 U.S. 137, 146-47 n.5

(1987).

If the claimant establishes that she satisfies the first two steps, the ALJ must then

determine whether or not the claimant's impairment meets or equals one of the impairments

listed in Appendix 1 of the regulations ("Listing of Impairments").  20 C.F.R. §§ 404.1520(d),

---

[3] "Substantial work activity" is work that actively involves doing significant physical or mental activities even if it is
done part-time, to a lesser extent, for lesser pay, or with less responsibility than previous work.  20 C.F.R. §
404.1572(a).  "Gainful work activity" is work that is usually done for pay or profit.  20 C.F.R. § 404.1572(b).

404.1526(e) (stating that at the ALJ level of review "the responsibility for deciding medical equivalence rests with the Administrative Law Judge…") If the claimant meets or equals *all* of the criteria in a listing then she is presumed to be disabled and is entitled to DIB.  *See* 20 C.F.R. § 404.1520(d); *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990).  If the claimant does not meet or equal all of the requirements in a listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). [4]  20 C.F.R. § 404.1520(e).  At step four, the ALJ must determine whether the claimant can perform the physical and mental requirements of her past relevant work[5] considering her RFC. 20 C.F.R. § 404.1520(f).  If the claimant is able to return to her past relevant work, either as she performed it or as it is generally performed in the national economy, she will be deemed "not disabled" and denied DIB.  *Id.*  If the claimant is unable to return to her past relevant work, the process continues to step five.

At the final step of the sequential analysis, the ALJ will compare whether the claimant can perform any other substantial gainful work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v).   Here, the burden is shifted to the Commissioner. *Yuckert*, 482 U.S. at 146-47 n.5.   If the Commissioner cannot prove the claimant is capable of other substantial gainful work, then the claimant is entitled to DIB. *Id.*

### C.  <u>The ALJ's Decision</u>

In Judge O'Leary's decision, he applied the facts—from both the record and the testimony heard at the supplemental hearing—to the five-step sequential process and concluded

---

[4] The claimant's RFC is her "ability to do physical or mental work activities on a sustained basis despite limitations from her impairments" and is determined based on all the claimants impairments—both severe and not severe. (R. at 436.)
[5] Past relevant work is defined as "work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date the disability must be established." (R. at 436.)

that Plaintiff was "not disabled." (R. at 443.)  Judge O'Leary found that Plaintiff had not

engaged in substantial gainful activity from September 1, 1998 through December 31, 2002—her

date last insured.  (*Id.* at 437.)  Additionally, the decision lists four severe impairments that, in

combination, significantly limited Plaintiff's ability to perform some basic physical work-related

activities.  (*Id.*)  Judge O'Leary found that Plaintiff had the following severe impairments:

degenerative changes of the knees and the facet joints of the lumbosacral spine, atrial fibrillation,

a thyroid cyst, and swelling of both hands. (*Id.*)

        At the third step, Judge O'Leary determined that Plaintiff's impairments neither met nor

equaled the listed impairments. (*Id.*)  Judge O'Leary focused on three listings: sections 1.00 et

seq. (musculoskeletal body system), sections 4.00 et seq.  (cardiovascular body system) and

sections 9.00 et seq. (endocrine body system). (*Id.*)  Judge O'Leary held that none of Plaintiff's

impairments met or equaled one of the listings because no "treating or examining physician has

provided clinical or diagnostic evidence for a finding equal in severity to the criteria of a listed

medical impairment." (*Id.*)

        Before progressing to the fourth step, Judge O'Leary found that Plaintiff's RFC rendered

her capable of performing sedentary work activity[6] as defined by  20 C.F.R. § 404.1567. (R. at

438.)  Judge O'Leary determined Plaintiff's RFC by examining the medical evidence that could

reasonably be expected to produce her alleged pain and then analyzing the affect that pain would

have on Plaintiff's ability to perform basic work activities. (*Id.*)  This process allows the ALJ to

consider the entire record when considering the extent of Plaintiff's subjective complaints of

pain not substantiated by objective medical evidence. (*Id.*)  Judge O'Leary examined the medical

---

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like
docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain
amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and
standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

evidence to determine whether Plaintiff's claims concerning the intensity, persistence, and limitations of her pain were credible considering the factors of 20 C.F.R. § 404.1529(c). Judge O'Leary recounted the medical evidence from more than 27 different doctor's appointments and medical tests from a nine-year period, including the entire period of Plaintiff's alleged disability. (R. at 438-41.)

Plaintiff and the Commissioner both presented testimony from medical experts at the February 8, 2000 hearing.   Dr. Albert Mylod, Plaintiff's medical expert, opined that her knee impairments *equaled* a medical listing in section 1.03. (*Id.* at 281, 441.)  Yet, the Commissioner's expert, Dr. Martin Fechner, opined that Plaintiff could engage in sedentary work activity despite her impairments. (*Id.* at 441).

Although Dr. Mylod is a board certified orthopedic surgeon and Dr. Fechner is an internist, Judge O'Leary gave more credence to Dr. Fechner's testimony, finding that it was based upon the medical evidence in the record and more consistent with the reports from Plaintiff's treating physicians, including her orthopedic specialist Dr. Alan J. Sarokhan. (R. at 441.)  Judge O'Leary adopted Dr. Fechner's determination that Plaintiff could engage in sedentary work because Dr. Fechner's conclusion was consistent with the records of Plaintiff's treating physicians. (*Id.*)

Additionally, Judge O'Leary determined that Plaintiff's subjective complaints of "constant, severe, and disabling knee and low back pain" were only partially credible. (*Id.* at 442.)  Judge O'Leary based his evaluation on Plaintiff's medications, treatment options, and the fact that she did not seek either hospital treatment or high-potency medications for her pain. (*Id.* at 442-43.)

Judge O'Leary also concluded—relying on the testimony of Dr. Fechner, who specializes in cardiology—that because Plaintiff's atrial fibrillation is regulated with medication, it would not prevent her from participating in sedentary work. (*Id.* at 442.)

At the supplemental hearing before Judge O'Leary, Plaintiff argued that she was incapable of fine fingering manipulation because of her swollen hand condition. (*Id.*)  Judge O'Leary rejected Plaintiff's claim because there was no pain involved, the condition was designated "mild," and Plaintiff had performed her job "for several years with the condition of her hands." (*Id.*)  These factors led to a determination that the condition would not be sufficient to preclude her from working as an import manager. (*Id.*)

Lastly, Judge O'Leary determined Plaintiff's RFC did not preclude her from performing her working as an import manager. (*Id.*)  Weighing the testimony of vocational expert Rocco Meola, Plaintiff's testimony concerning her work, her initial disability application, and the job description from the Dictionary of Occupational Titles ("DOT"), Judge O'Leary determined Plaintiff could perform the duties of an import manager and was therefore "not disabled." (*Id.*)

### D.  The ALJ's Decision is Supported by Substantial Evidence

Plaintiff contends that Judge O'Leary's decision "amounts to nothing other than a premeditated, goal-oriented, unexplained, and convenient dismantling of the evidence of record." (Pl.'s Br. 15.)  She raises four arguments: (1) that she equaled a listing of 1.03, (2) that Judge O'Leary's RFC determination was not supported by substantial evidence in the record, (3) that Judge O'Leary's pain evaluation did not adhere to Social Security protocol, and (4) that questioning of the vocational expert did not reflect the evidence of record. (Pl.'s Br. 15-16.)

None of Plaintiff's contentions establish that Judge O'Leary's decision was unsupported by substantial evidence; therefore, the Commissioner's final decision is affirmed.

### 1. There was substantial evidence in the record to support Judge O'Leary's conclusion that Plaintiff did not meet a Listing.

Plaintiff argues that Judge O'Leary did not adequately combine and compare her impairments to determine medical equivalence, and that Judge O'Leary should have accepted Dr. Mylod's testimony that Plaintiff equaled a listing of 1.03. (Pl.'s Br. 17-18.)  Judge O'Leary met his burden, however, by explaining why Plaintiff did not meet the listing, recounting the relevant evidence from the record, stating why he accepted the examining doctors' evidence, and explaining why he rejected the contradictory testimony of Dr. Mylod.  *See Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (holding an ALJ must provide "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected").

Judge O'Leary was solely responsible for determining whether Plaintiff's conditions met or equaled a medical listing found in the Listing of Impairments. 20 C.F.R. § 404.1526(e).  An ALJ is required to provide a "discussion of the evidence and an explanation of reasoning supporting a determination that [the claimant's] 'severe' impairment does not meet or is not equivalent to a listed impairment" in his decision so that a reviewing court may determine whether the ALJ's decision was supported by substantial evidence in the record. *Burnett v. Commissioner of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000).

For a claimant to match a listing, she "must meet *all* of the specified medical criteria." *Sullivan*, 493 U.S. at 530.  If the impairment only meets *some* of the listed criteria, the claimant

will not presumptively qualify for disability, no matter how severe the impairment. *Id.* If the claimant alleges she "equals" the listing, she has the burden of proving that her unlisted impairments are "equal in severity to *all* the criteria for the one most similar listed impairment." *Id.*; *Williams*, 970 F.2d at 1186 (quoting *Zebley*, 493 U.S. at 531); *see also* 20 C.F.R. § 416.926. "A claimant cannot qualify for benefits under the equivalence step by showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (internal quotations omitted).

Here, Judge O'Leary held that Plaintiff did not have "an impairment or combination of impairments that met or medically equaled one of the listed impairments." (R. at 437.) As no examining physician provided clinical or diagnostic evidence that Plaintiff's impairments equaled any medical listing, the ALJ found Plaintiff did not qualify for DIB at this step. (*Id.*)

The record contains no evidence that Plaintiff had a gross anatomical deformity, the initial requirement of the listing at 20 C.F.R. Part 404, Subpt. P, App. 1 § 102. Judge O'Leary noted that the records of Plaintiff's treating orthopedist, Dr. Sarokhan, indicated that she had full range of ankle and subtalar motion with full strength in all groups, normal stance and gait, and accomplished toe and heel walking without difficulty. (R. at 440.) Plaintiff had knee pain, but a June 1999 visit to Dr. Lesko indicated that physical therapy was producing significant improvement in her range of motion. (*Id.*) Judge O'Leary's recounting of these treating medical examinations—amidst an even broader survey of Plaintiff's medical history—satisfied his duty to provide substantial evidence for his determination that Plaintiff did not meet or equal a listing. The record was void of evidence that *all* of the requirements of any listing were either met or equaled.

Dr. Mylod's opinion that a 1.03 listing was "equaled" was rejected by Judge O'Leary because it was not consistent with the records provided by Plaintiff's treating orthopedist. (*Id.* at 441.)  While Dr. Mylod's opinion was ultimately rejected, it was not done so without reason or cause; rather, Judge O'Leary properly provided an "indication" of why the evidence was not persuasive after fully weighing the non-examining opinion. (*Id.*) "While the ALJ cannot just reject medical evidence at a whim, if he provides a reason for choosing competing testimony, he can do so as long as he provides reasons for his decisions." *Plummer*, 186 F.3d at 429.   The ultimate listing decision is within the ALJ's discretion and the rules state that evidence from treating sources will generally be given more weight, especially when those findings are consistent throughout the record. 20 C.F.R. § 404.1527(d)(1)-(4).  The testimony of non-treating sources, such as Dr. Mylod, are always considered "opinion evidence." 20 C.F.R. § 404.1527(f).

Unlike the last time the matter was before this Court, there is no indication that Dr. Mylod's testimony was given anything less than full credence and fair consideration, providing Plaintiff with due process of law.  *Cf. Buckley v. Comm'r of Social Sec*, No. 05-4719 (D.N.J. Sept. 7, 2006).  Dr. Mylod's's testimony was not discounted because he was Plaintiff's paid expert, but because his opinion was not consistent with the records of Plaintiff's examining physicians. *Cf. id.*

Additionally, the Court finds that Judge O'Leary fulfilled his obligation to evaluate Plaintiff's impairments in combination when he expressly noted that he took the combination of impairments into account when making his finding. *Davis v. Commissioner,* 105 Fed. Appx. 319, 324 (3d Cir. 2004); *Jimenez v. Astrue*, 2008 U.S. Dist. LEXIS 102807, at *26 (D.N.J. Dec. 19, 2008).  Moreover, Plaintiff has not provided this Court with an explanation of how a combination analysis could have justified a listing.  *See Williams v. Barnhart*, 87 Fed. Appx.

240, 243 (3d Cir. 2004) (finding plaintiff's inability to offer an alternative, plausible combination analysis discredits his challenge to the ALJ's decision); *Jimenez*, 2008 U.S. Dist. LEXIS 102807 at *26. Instead, Plaintiff accuses Judge O'Leary of failing to compare the impairments and then suggests that he merely adopt Dr. Mylod's opinion that listing 1.03A be used. (Pl.'s Br. 18-19.) This line of argument fails to demonstrate that Judge O'Leary's decision was unsupported by substantial evidence, therefore the Court affirms Judge O'Leary's finding that Plaintiff did not meet or equal a listing.

### 2. There was substantial evidence in the record to support a finding that Plaintiff had the RFC to engage in sedentary work activity.

Judge O'Leary based his RFC determination that Plaintiff could engage in sedentary work upon substantial evidence in the record, including a description of more than 27 medical visits or treatment sessions spanning a period of more than nine years. (R. at 438-41.) Furthermore, Judge O'Leary fulfilled his obligation under *Cotter* to "be as comprehensive and analytical as feasible" and include statements of subordinate facts used as the basis for ultimate factual conclusions. *Cotter*, 642 F.2d at 705 (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974)).

An ALJ determines a claimant's RFC based on the medical records, observations made during formal medical examinations, descriptions of claimant's limitations, and observations of the claimant's limitations by others, as well as medical testimony not based on formal medical evaluations. 20 C.F.R. § 404.1545(a). If there are inconsistencies in medical testimony, the ALJ is not only entitled to make a choice between opinions, but *he is required to do so*. *Cotter*, 642 F.2d at 705; 20 C.F.R. § 404.1527(c)(2). When weighing evidence, the ALJ considers various

factors including the opining parties' examining relationship, the treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(d).  The ALJ's finding must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.

While the ALJ must consider all of the evidence and various influencing factors in making an RFC determination, the final responsibility for deciding this issue is reserved to the Commissioner; the ALJ is not required to "give any special significance to the source of an opinion on issues reserved to the Commissioner…" 20 C.F.R. § 404.1527(e)(2)-(3). Nonetheless, the rules state that treating sources will be entitled to greater weight than non-examining physicians as "these sources are likely to be the medical professionals most able to provide a detailed, longitudal picture" of a claimant's overall medical situation. 20 C.F.R. § 404.1527(d)(2); *see Plummer*, 186 F.3d at 429.

In finding that Plaintiff could engage in sedentary work, Judge O'Leary relied on the testimony of Dr. Fechner taken at the 2007 supplemental hearing.  Dr. Fechner opined that Plaintiff had the ability to perform the demands of sedentary work. (R. at 494-504.)  Plaintiff argues that Dr. Mylod's testimony, which concluded that Plaintiff could not perform sedentary work (see fn. 6, *supra*), was not adequately considered by Judge O'Leary.  Plaintiff contends that because Dr. Mylod is a board certified orthopedic surgeon and Dr. Fechner is an internist, Dr. Mylod's view should prevail.  Yet, specialization is only one factor the ALJ must consider when weighing the various sources of testimony. 20 C.F.R. § 404.1527(d)(5).

Here, Judge O'Leary found that the evidence of record from Plaintiff's treating physicians—Dr. Sarokhan, Dr. Lesko, and Dr. Weinberger—and the consistency of Dr. Fechner's testimony with the medical records, were more persuasive factors.  Evidence from

treating physicians is afforded greater weight under the Social Security Rules and Judge O'Leary was under no obligation to accept Dr. Mylod's testimony simply because of his specialty. 20 C.F.R. § 404.1527(d)(2), (e)(3).  Such analysis and testimonial balancing are an ALJ's core responsibilities and Judge O'Leary acted within his discretion when making his RFC determination.  *See Cotter*, 642 F.2d at 705; 20 C.F.R. § 404.1527(e)(2)-(3).

Judge O'Leary cited substantial evidence and met his explanatory burden under *Cotter* in finding that Plaintiff's RFC rendered her capable of performing sedentary work.

### 3. The ALJ met his burden and had substantial evidence for his decision concerning the credibility of Plaintiff's subjective complaints of pain.

Judge O'Leary gave Plaintiff's subjective complaints of pain serious consideration as required by the Third Circuit, *see Smith v. Califano*, 637 F. 2d 968, 972 (3d Cir. 1981), but ultimately deemed those complaints only partially credible because of substantial evidence in the record that contradicted Plaintiff's testimony.

As Plaintiff had an impairment—osteoarthritis—that could reasonably be expected to produce pain, Judge O'Leary was required to evaluate the intensity and persistence of the pain using the entire evidentiary record, including Plaintiff's subjective complaints. 20 C.F.R. § 404.1529(c)(1).  To reject a claim of disabling pain, an ALJ must "specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).  A plaintiff's claim of pain will not be rejected *solely* because it is not directly supported by medical evidence, yet evidence such as medication, treatment, and other measures taken to reduce pain will be considered. 20 C.F.R. § 404.1529(b)-(c).

Plaintiff argues that her subjective complaints of pain were not given serious consideration and that her testimony was rejected without a proper discussion of objective medical evidence.  She relies on *Schaudeck v. Commissioner,* which requires that an ALJ's decision contain specific reasons, supported by the record, to validate his credibility finding. 181 F.3d 429, 433 (3d Cir. 1999).  Plaintiff's reliance is misplaced.  In *Schaudeck*, the ALJ ignored the documented side effects of the plaintiff's chemotherapy medication and reached contradictory conclusions based upon identical evidence. *Id.* at 433-35.

Here, Judge O'Leary went through each of Plaintiff's three complaints of pain (knee/back pain, atrial fibrillation, and swollen hands)[7] and discussed the medical and non-medical evidence that led to his determination of "partial credibility" within the guidelines of 20 C.F.R. § 404.1529. (R. at 441-42.)  Concerning Plaintiff's osteoarthritis knee and back pain, Judge O'Leary found that Plaintiff did not seek or require "inpatient hospital admissions, knee or back surgery, frequent emergency room visits or the use of any potent and potentially addictive narcotic-opiod analgesic medication or other radical treatment modalities for her alleged complaints" for the nine years since her initial complaint of pain. (*Id.*)  Specifically, the factors used by Judge O'Leary in making his credibility determination are spelled out at 20 C.F.R. § 404.1529(c)(3)(iv)-(vi).[8]

Plaintiff also argues that her nontreating orthopedic expert's testimony that her "complaints are not unusual for someone with advanced knee arthritis," (R. at 284), was not weighed by Judge O'Leary in his pain credibility analysis.  Dr. Mylod's testimony in this instance is not medical evidence "obtained from the application of medically acceptable clinical

---

[7] In her brief, Plaintiff only challenged the ALJ's analysis of the plaintiff's back and knee pain.

[8] "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." 20 C.F.R. § 404.1529(c)(3).

and laboratory diagnostic techniques" and is weighed the same as Plaintiff's own subjective

testimony. 20 C.F.R. § 404.1529(c)(2)-(3).  Dr. Mylod's comment does not directly address the

intensity and persistence of Plaintiff's particular circumstance, but rather concludes that it would

not be an "unusual" complaint for someone with her condition.

Considering the Plaintiff-specific findings articulated in the decision, Judge O'Leary

acted within his discretion in weighing the medical opinions and the medical record as a whole

before reaching his ultimate conclusion. 20 C.F.R. § 404.1527(e).   Judge O'Leary's

consideration of Dr. Mylod's testimony has been discussed at length above, in sections D-1 and

D-2, and it has been established that Judge O'Leary met his explanatory burden for rejecting

some of Dr. Mylod's opinion testimony. 20 C.F.R. § 404.1527(f).

When "the record does not contain any conflicting evidence that would require the ALJ

to provide an explanation as to why he accepted or rejected conflicting medical evidence" and no

probative evidence has been ignored, the ALJ's finding will be upheld.  *See Malloy v. Comm'r*

*Soc. Sec.*, 2008 U.S. Dist. LEXIS 40971, at *19 (D.N.J. 2008).  Here, Plaintiff does not argue

there is evidence in the record indicating Judge O'Leary ignored any conflicting medical

evidence, nor does Plaintiff point to probative evidence demonstrating an error in Judge

O'Leary's credibility assessment. Therefore, the Court finds that Judge O'Leary properly

supported his credibility determination with substantial evidence from the record.

### *4. There was substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work.*

The medical record, Plaintiff's description of her own work performance, the testimony

of the vocational expert (VE), and the DOT's definition of import manager provide substantial

and sufficient evidence to support Judge O'Leary's finding that Plaintiff was capable of performing her past relevant work as an import/export manager.  Judge O'Leary's determination that Plaintiff is capable of performing her past relevant work—either as it was actually performed or as it is generally performed in the national economy—led to a finding that she was "not disabled." 20 C.F.R. §§ 404.1520(e), 404.1560(b)(2).

Plaintiff argues that Judge O'Leary used the VE's testimony to reach a "counter-intuitive conclusion." (Pl.'s Br. 32.)  Additionally, Plaintiff argues that Judge O'Leary erred when he found that Plaintiff could fulfill the standing, sitting, and walking requirements of her previous position and that she could perform the fine finger manipulations required in that position. Plaintiff mischaracterizes the nature of the VE's testimony, improperly calls for blind acceptance of her expert's testimony, ignores the legal definition of sedentary, and fails to recognize the requirements needed to fulfill the duties of an import/export manager as that position is performed in the national economy.

An ALJ is given great discretion in what evidence he can consult and consider when determining whether a claimant can perform her past relevant work. 20 C.F.R. § 404.1560(b)(2). The code lists, but does not require, a range of sources an ALJ may consult when making this determination.  *Id.*  An ALJ can consider the claimant's own testimony about her work, other information about her duties and performance, other individuals' testimony, the opinion of a vocational expert, and official references, especially the DOT. *Id.*

Judge O'Leary considered Plaintiff's description of her daily performance requirements, the VE's testimony regarding her ability to perform the job of import/export manager, and the DOT's description of her prior position. (R. at 442.)  As required by SSR 82-62, Judge O'Leary compared Plaintiff's RFC with the physical and mental demands of her past relevant work either

as she performed it or as it is generally performed in the national economy. Plaintiff's RFC rendered her capable of performing sedentary work, (R. at 438), and Plaintiff does not dispute that her past work was skilled and sedentary, (Pl.'s Br. 32).   Therefore, Judge O'Leary had a "sufficient basis" for his determination that Plaintiff could perform her past relevant work.  SSR 82-62.

In her brief, Plaintiff relies on the testimony of her expert that she could only sit for up to four hours during an eight-hour workday and that she would have trouble with gross and fine manipulation of her hands because of swelling. (R. at 284-85.)  While the testimony of Plaintiff's nontreating expert was weighed by Judge O'Leary in making his determination, Judge O'Leary exercised his discretion when adopting medical opinions more consistent with the record as a whole.

Judge O'Leary found Dr. Fechner's determination that Plaintiff could perform sedentary work (which primarily requires sitting along with some standing and walking) to be more consistent with the record. (R. at 441.)  For example, Dr. Fechner's testimony was comparable to a 1999 RFC Report that found Plaintiff could stand or walk for up to 6 hours and sit for up to 6 hours during an eight-hour workday. (R. at 196.)  Additionally, Judge O'Leary's finding that Plaintiff could use her hands to perform her past relevant work was based on the record as a whole and the fact that she was able to use her hands to fulfill her duties for more than two years after the onset of the swelling. (R. at 442.)

Judge O'Leary's opinion follows "an orderly pattern" and shows "clearly how specific evidence leads to a conclusion." SSR 82-62.  Judge O'Leary used three of the listed 20 C.F.R. § 404.1560(b)(2) factors—Plaintiff's description of her position, the VE's testimony, and the DOT description—which all lead to the same, undisputed, conclusion: Plaintiff's past relevant work

was sedentary.  When the evidence unequivocally establishes that the work is sedentary and that classification falls within a plaintiff's RFC, the ALJ has met his burden of substantially supporting his determination with evidence from the record. *See Vega v. Comm'r of Soc. Sec.*, 2009 U.S. App. LEXIS 28331, at *7 (3d. Cir. Dec. 23, 2009).

As the recounting of the evidence above shows, the record in this case contains substantial evidence to support Judge O'Leary's conclusion that Plaintiff had the capacity to perform her past relevant work, either as it was actually performed by her or as it is generally performed in the national economy.

## III. CONCLUSION

For the foregoing reason, the Court concludes that the ALJ's findings are supported by substantial evidence, and thus affirms the Commissioner's final decision denying Plaintiff DIB. An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: August 3, 2010